

U.S. Department of Justice

United States Attorney
District of Massachusetts

Main Reception: (617) 748-3100

United States Courthouse, Suite 9200
1 Courthouse Way
Boston, Massachusetts 02210

April 5, 2007

**FEDERAL EXPRESS**
Harold Hakala, Esq.
Attorney At Law
15 Court Square
Boston, MA 02108

    Re:  United States v. Santino Hall
         Criminal No. 04-10028-RCL

Dear Attorney Hakala:

    Pursuant to Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, the government provides the following automatic discovery in the above-referenced case:

**A.**    **Rule 16 Materials**

    **1.**    **Statements of Defendant under Rules 16 (a)(1)(A) & (B)**

        **a.**    **Defendant's Relevant Oral Statements to Then Known Government Agents**

    On March 7, 2007, U.S. Secret Service Special Agents Thomas Morley, Derek Boyd and Tim Costello interviewed the defendant at Attorney Harold Hakala's office, located at 15 Court Square, Boston, MA. The interview was prompted by Attorney Hakala, who had contacted SA Costello to discuss the defendant's knowledge of ongoing counterfeit production.

    After being advised of his *Miranda* rights, and after having waived those rights, the defendant freely spoke to these agents. In addition to providing the agents with information regarding the production of counterfeit money, the defendant also stated, among other things, that he had attempted to obtain a fraudulent U.S. Passport while on probation for a prior gun charge. He

Case 1:04-cr-10028-RCL    Document 8    Filed 04/06/2007    Page 2 of 6

reported in detail, how he had used the personal information of a friend, Ernest Welch, to apply for the passport. The defendant further stated that he had asked for Ernest Welch's personal information for the passport because he could not get one on his own, due to his own immigration status. He stated that he needed to travel to Canada and his native country of Trinidad. The defendant also stated that the passport application was completed with Ernest Welch's knowledge.

The defendant also stated that he came to the United States on a visitor's visa approximately 10 years ago, under the name Rudy Orr, DOB: 9/2/76. He further stated that his birth name is Rudy Orr, and that once he came to this country he went by the name of Santino Hall, DOB: 2/10/74. (**See Bates No. 04 - 06**).

On March 18, 2007, U.S. Secret Service Special Agents Derek Boyd and Kevin Griffin interviewed the defendant at the Dedham Police Station following his arrest for passing counterfeit money at a Best Buy Store. After being advised of his *Miranda* rights, and after having waived those rights, the defendant freely spoke to these agents about the circumstances underlying his arrest, and, among other things, he made admissions concerning the underlying federal charges (passport fraud and illegal re-entry) that were essentially the same as those he made during the March 7th interview. (**See Bates No. 07 - 08**).

There are no other relevant oral statements, made by the defendant before or after arrest in response to interrogation by a person the defendant knew to be a government agent, in the possession, custody or control of the government, which are known to the attorney for the government.

b.     **Written and Recorded Statements**

On March 7, 2007, the defendant was interviewed by SA Thomas, SA Derek Boyd an SA Tim Costello at Attorney Hakala's office (see above). The interview was recorded in a written report made by the agents. (**See Bates No. 04 - 06**).

On March 18, 2007, the defendant signed a *Waiver of Rights* form and thereafter was interviewed by SA Derek Boyd and SA Kevin Griffin at the Dedham Police Station (see above). (**See Bates No. 132**). The interview was recorded in a written report made by the agents. (**See Bates No. 07 - 08**).

On March 18, 2007, the Dedham Police Department took booking arrest photographs of the defendant following his arrest on the counterfeiting charges. (**See Bates No. 119 - 120**).

On March 19, 2007, following his arrest on the underlying federal charges, the defendant was given his *Miranda* warnings, but refused to speak with the arresting agents without his attorney being present. The defendant, however, indicated in writing, by stating "Yes" and signing his name, that he understood and could read the English language. (**See Bates No. 138 - 139**).

On March 19, 2007, fingerprints were taken of the defendant following his arrest on the underlying federal charges, and the defendant signed the ten-print fingerprint card. (**See Bates No. 140**).

On March 19, 2007, the U.S. Marshal Service took booking arrest photographs of the defendant following his arrest on the underlying federal charges. (**See Bates No. 141 - 142**).

There are no other relevant written or recorded statements, made by the defendant before or after arrest in response to interrogation by a person the defendant knew to be a government agent, in the possession, custody or control of the government, which are known to the attorney for the government.

   c.   **Grand Jury Testimony of the Defendant**

The defendant did not testify before a grand jury in relation to this case.

   2.   **Defendant's Prior Record under Rule 16 (a)(1)(D)**

Enclosed, please the defendant's prior criminal history record. (**See Bates No. 103 - 118**).

   3.   **Documents and Tangible Objects under Rule 16(a)(1)(E)**

Enclosed herein are copies of the following documents, which represent books, papers, documents and tangible items which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in its case-in-chief at the trial of this case:

   a)   See enclosed documents and other materials. (**Bates No. 01 - 142**).

4.  **Reports of Examinations and Tests under Rule 16 (a)(1)(F)**

There are no reports of examinations and tests.

B.  **Search Materials under Local Rule 116.1(C)(1)(b)**

No searches were conducted relating to the charges in the indictment.

C.  **Electronic Surveillance under Local Rule 116.1(C)(1)(c)**

No oral, wire, or electronic communications of the defendant as defined in 18 U.S.C. § 2510 were intercepted relating to the charges in the indictment.

D.  **Consensual Interceptions under Local Rule 116.1(C)(1)(d)**

There were no interceptions (as the term "intercept" is defined in 18 U.S.C. § 2510(4)) of wire, oral, or electronic communications relating to the charges contained in the indictment, made with the consent of one of the parties to the communication in which the defendant was intercepted or which the government intends to offer as evidence in its case-in-chief.

E.  **Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)**

There is no conspiracy count charged in the indictment.

F.  **Identifications under Local Rule 116.1(C)(1)(f)**

The defendant was not the subject of an investigative identification procedure used with a witness the government anticipates calling in its case-in-chief involving a line-up, show-up, photo spread or other display of an image of the defendant.

G.  **Disclosure of Exculpatory Evidence under Local Rule 116.2**

1.  **Exculpatory Evidence Under Local Rule 116.2(B)(1)**

With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A), the government states as follows:

### a. - b. Evidence Tending to Negate Defendant's Guilt or Cast Doubt on Admissibility of Evidence

The government is not aware of any exculpatory information or materials relating to this case of the types described in Local Rule 116.2(B)(1).

### c. Promises, Rewards, and Inducements

No promises, rewards, or inducements have been offered to any prospective witness whom, at this writing, the government anticipates calling in its case-in-chief.

### d. - e. Criminal Records of Witnesses and Pending Criminal Cases

The government has not yet determined which witnesses it intends to call in its case in chief. When the government makes such a determination, it will promptly provide any criminal records and/or information relating to any pending cases for its prospective witnesses. Notwithstanding, enclosed, please find Ernest Duane Welch's criminal history record. (**See Bates No. 48 - 55**).

Additionally, there were several agents who were involved in this investigation, however, the government has not yet determined which of these individuals it will call as witnesses in its case in chief. When and if the government makes such a determination, it will promptly provide any criminal records and/or information relating to any pending cases for its prospective witnesses.

### f. Failure of Percipient Witness to Make Identification

As noted above, the defendant has not been the subject of any investigative identification procedures.

## H. Other Matters

The government is aware of its continuing duty to disclose newly discovered additional evidence or material that is subject to discovery or inspection under Local Rules 116.1 and 116.2(B)(1) and Rule 16 of the Federal Rules of Criminal Procedure.

**I.    RECIPROCAL DISCOVERY**

The government requests reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure and Local Rule 116.1(D).

**J.    NOTICE OF ALIBI**

The government demands, pursuant to Rule 12.1 of the Federal Rules of Criminal Procedure, written notice of the defendant's intention to offer a defense of alibi. The time, date, and place at which the alleged offense was committed is set forth in the indictment in this case, a copy of which you previously have received.

Please feel free to call me if you have any questions or concerns regarding the above information.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: *[signature]*
ANTOINETTE E.M. LEONEY
Assistant U.S. Attorney

Enclosures
cc:  Ms. Noreen Russo, Deputy Courtroom Clerk
     to the Robert B. Collings
     (w/o enclosures)

6